UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| ANGELIA ECKENROTH, et al.,<br>  Plaintiffs, | )<br>)<br>)   **JURY TRIAL DEMANDED**<br>)<br>)   Case:  2:22-cv-2500 |
| v. | ) |
| KAYAK SOFTWARE CORPORATION,<br>et al.,<br>  Defendants. | )<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs, Angelia Eckenroth, Bradley Eckenroth, Hannah Eckenroth, Leah Morgan, Ian Morgan, Shay Morgan, and Steve Morgan, (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint against Kayak Software Corporation ("Kayak"), TravelDNA Inc., Travel Outlet of Virginia, LLC, and John Doe Corporations 1-50 state as follows:

### INTRODUCTION

1. This is an action for declaratory relief, injunctive relief, actual or statutory damages, punitive damages, costs and attorneys' fees for violations of K.S.A. 50-623, *et seq*. ("KCPA"), which prohibits suppliers from engaging in abusive, deceptive, dishonest and unfair practices against consumers.

2. Kayak's business model is an abusive, deceptive, dishonest and unfair practices in that Kayak represents to consumers that it is a "search engine" that "searches" travel websites to find good deals when the simpler truth is that Kayak

advertises on behalf of travel agencies that have agreed to financially incentivize Kayak to solicit consumers on behalf of the travel agencies.

3. Further, Kayak's "terms and conditions" violate Kansas' consumer protection laws by purporting to require Kansas consumers to waive their legal protections under the KCPA, an act that is expressly forbidden by the KCPA.

4. ChatDeal follows a more traditional pattern of deceptive, dishonest and unfair practices by making illusory promises and soliciting transactions with "implied" benefits that are completely illusory and/or substantively less than Plaintiffs and other reasonable consumers expect them to be.

5. Finally, Chatdeal is, in and of itself, a deceptive, dishonest and unfair practice in that, it is not clear which entity (or entities) actually operate the website Chatdeal.com.

6. Plaintiffs bring this suit in their capacity as private attorneys general and representative of themselves and other Kansas Consumers, seeking declaratory and injunctive relief to aid all Kansas Consumer in addition to any personal relief sought.

## JURISDICTION

7. Plaintiffs are all citizens of Missouri or Kansas, and no

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount at issue exceeds $75,000, exclusive of costs and interest.

9. Venue is appropriate in this court because Defendants directed their illicit conduct at Plaintiffs in and through Johnson County, Kansas.

10. Plaintiffs demand a jury trial for all issues so triable.

## PARTIES

11. Plaintiff, Angelia Eckenroth, is a natural person who resides in and was a citizen and resident of the state of Kansas at the time of the events alleged below who sought and/or acquired airline tickets and/or related services for personal, family, household, business or agricultural purposes in and/or through the State of Kansas.

12. Plaintiff, Bradley Eckenroth, is a natural person who resides in and was a citizen and resident of the state of Kansas at the time of the events alleged below who sought and/or acquired airline tickets and/or related services for personal, family, household, business or agricultural purposes in and/or through the State of Kansas.

13. Plaintiff, Hannah Eckenroth, is a natural person who resides in and was a citizen and resident of the state of Kansas at the time of the events alleged below who sought and/or acquired airline tickets and/or related services for personal, family, household, business or agricultural purposes in and/or through the State of Kansas.

14. Plaintiff, Leah Morgan, is a natural person who resides in and was a citizen and resident of the state of Missouri at the time of the events alleged below who sought and/or acquired airline tickets and/or related services for personal, family, household, business or agricultural purposes in and/or through the State of Kansas.

15. Plaintiff, Ian Morgan, is a natural person who resides in and was a citizen and resident of the state of Missouri at the time of the events alleged below who sought and/or acquired airline tickets and/or related services for personal, family, household, business or agricultural purposes in and/or through the State of Kansas.

16. Plaintiff, Shay Morgan, is a natural person who resides in and was a citizen and resident of the state of Missouri at the time of the events alleged below who sought and/or acquired airline tickets and/or related services for personal, family, household, business or agricultural purposes in and/or through the State of Kansas.

17. Plaintiff, Steve Morgan, is a natural person who resides in and was a citizen and resident of the state of Missouri at the time of the events alleged below who sought and/or acquired airline tickets and/or related services for personal, family, household, business or agricultural purposes in and/or through the State of Kansas.

18. Defendant, Kayak Software Corporation ("Kayak") is a Delaware corporation, who publicly lists its registered agent as Corporation Service Company, 251 Little Falls Drive, Wilmington Delaware, 19808 and who, on information and belief, has no physical presence in the state of Kansas and is headquartered in Stamford Connecticut where Kayak has located its nerve center and primary place of business. Kayak is a statutory entity and is not a citizen of Kansas or Missouri.

19. Defendant TravelDNA, Inc. (collectively referred to as "Chatdeal" along with Defendants Travel Outlet of Virginia, LLC and Does 1-99) is a Delaware corporation, who publicly lists its registered agent as Corporation Service Company, 251 251 Little Falls Drive, Wilmington Delaware, 19808 and who, on information and belief, has no physical presence in the state of Kansas and is not a citizen of Kansas or Missouri. Plaintiffs will need discovery to affirm the actual location of TravelDNA, Inc.'s actual "nerve center" and "principle place of business," as public records suggest that it could

4

be located in either Delaware or California, making TravelDNA, Inc. a citizen of one of those two states, but not a citizen of Kansas or Missouri.

20. Defendant Travel Outlet of Virginia, LLC (collectively referred to as "Chatdeal" along with Defendant TravelDNA, Inc. and Does 1-99) is a Texas corporation, who publicly lists its registered agent as Andrew Wong of 901 S 6TH Ave #5 Hacienda Heights, CA  91745 and who, on information and belief, has no physical presence in the state of Kansas or Missouri, whose members are not citizens of Kansas or Missouri and is not itself a citizen of Kansas or Missouri. Travel Outlet of Virginia, LLC's public filing suggest that it is officially a single-member limited liability company, whose sole member, Sju-Jy M. Hsueh lists the same address form the member and company: 3351 Lone Pine Rd, W. Bloomfield, MI 48323 and, as such, would make Travel Outlet of Virginia, LLC a citizen of Michigan.

21. John Doe Corporations 1-50 are statutory entities (collectively referred to as "Chatdeal" along with Defendant TravelDNA, Inc. and Travel Outlet of Virginia, LLC), all believed to be foreign statutory entities with no physical presence in the state of Kansas and are not citizens of Kansas or Missouri. Chatdeal is a collective of statutory entities, and all acts of Chatdeal alleged below were committed by an employee, agent and/or apparent agent and so can be properly charged and attributed to Chatdeal through the principles of agency and/or respondeat superior.

**FACTUAL BACKGROUND**

22. Plaintiffs incorporate all preceding paragraphs here by reference.

The Transaction That Started the Ball Rolling

23. Some time prior to March 5, 2022, Plaintiffs Angelia Eckenroth, Hannah Eckenroth, Leah Morgan, Shay Morgan and Ian Morgan (collectively "Traveling Plaintiffs") decided to travel to France for a yoga retreat.

24. Plaintiffs decided to centralize their purchases and agreed that Angelia Eckenroth would find and purchase tickets for the Plaintiffs who were traveling.

25. On or about March 5, 2022, Angelia Eckenroth accessed the website run by Kayak, commonly known as Kayak.com ("Kayak.com").

26. Angelia Eckenroth used Kayak.com to purchase airline tickets for the Traveling Plaintiffs, eventually spending $6,600.00 for a series of flights scheduled to leave Kansas City on or about June 15, 2022.

27. Kayak does not directly sell airline tickets on Kayak.com, nor does Kayak run an airline.

28. Instead, Kayak.com advertises on behalf of third-party vendors.

29. Kayak advertises its services by representing that Kayak.com "Searches all the other travel sites to get you a great deal." (https://youtu.be/X8DiLr_TPQE, accessed on September 23, 2022).

30. Kayak advertises its services by representing that "Kayak searches hundreds of travel sites to find you great deals." (https://youtu.be/sE0rochxJgo, originally published February 9, 2022).

31. Kayak.com primarily generates revenue by charging for advertising and for referrals to the various companies that advertise on Kayak.com.

32. Kayak does not "search travel websites" to "find" consumers "great deals."

6

33. Kayak.com advertises on behalf of its advertisers and referral partners.

34. Kayak uses Kayak.com to solicit consumers on behalf of third-party merchants.

35. Chatdeal is a third-party company that advertises on Kayak.com.

36. Chatdeal advertises services through Kayak.com and a website commonly known as Chatdeal.com.

37. On or about March 5, 2022 Angelia Eckenroth searched Kayak.com for flights to Paris, France.

38. Angelia Eckenroth used Kayak.com to purchase tickets through Chatdeal for flights to France for the Traveling Plaintiffs.

39. As part of her purchase, Chatdeal encouraged Angelia Eckenroth to purchase "Travel Protection" for an additional charge.

40. Chatdeal represents to the public that "Travel Protection" is an "extra service option" that "implies a lot of advantageous options allowing you to cover unexpected damages." (https://chatdeal.com/products/travel-protection/, a true and accurate copy of which is attached as Exhibit A)

41. Among the "options" supposedly covered by Chatdeal's "Travel Protection" are:

    a. "Free exchange" defined as "Exchange your tickets in case of a missed flight or connection for free.

  b. "Refunding options" defined as "We'll work directly with the airlines to get you compensated in case of unplanned flight cancellation. . . ." (Exhibit A)

42. Chatdeal promotes its Travel Protection Plan by promising, "When acquiring the Travel Protection Plan, we'll do our best to prevent you from unexpected costs incurred before or during your travel." (Exhibit A)

43. The Traveling Plaintiffs reasonably understood Chatdeal's representations to mean that purchasing airline tickets through Chatdeal with the "Travel Protection" option meant that the Traveling Plaintiffs would receive a free ticket in exchange for any missed flight or connection, if a ticket were available.

44. The Traveling Plaintiffs reasonably understood Chatdeal's representations to mean that purchasing airline tickets through Chatdeal with the "Travel Protection" option meant that the Traveling Plaintiffs would receive and a refund for tickets paid for if the flight were unexpectedly cancelled and no tickets were available.

45. The Traveling Plaintiffs reasonably relied on Chatdeal's representations that purchasing airline tickets through Chatdeal with the "Travel Protection" option meant that the Traveling Plaintiffs would receive a free ticket in exchange for any missed flight or connection and a refund for tickets paid for if the flight were unexpectedly cancelled.

46. Nowhere did Chatdeal warn the public, Angelia Eckenroth or any of the other Traveling Plaintiffs that, should any one flight be cancelled, all flights purchased could be cancelled.

47. On or about June 14, 2022, the traveling Plaintiffs received a text message from American Airlines informing them that "Flight AA150 from ORD to CDG" was cancelled.

48. The Traveling Plaintiffs were confused, as they understood that their flight was supposed to be "Finnair AY5776," which was supposed to be traveling from MCI to ORD.

49. Angelia Eckenroth, on behalf of the Traveling Plaintiffs, contacted Chatdeal, American Airlines and Finnair on or about June 14, 2022.

50. On or about June 14, 2022 Chatdeal, American Airlines and Finnair all informed the Traveling Plaintiffs that the Traveling Plaintiffs were still booked to depart on June 15, 2022 and that no flights on Traveling Plaintiffs' itinerary had been cancelled.

51. On or about June 15, 2022, the Traveling Plaintiffs arrived at MCI, the airport in Kansas City, Missouri, and learned that the following flights had been changed or cancelled:

   a. The Traveling Plaintiffs flight leaving ORD for CDG on or about June 15, 2022 was cancelled; and

   b. Plaintiffs Shay Morgan and Ian Morgan were scheduled to fly to London, England on June 18, 2022; and

   c. Plaintiffs Shay Morgan and Ian Morgan were now not scheduled to fly from London, England to Paris, France.

52. An American Airlines employee, known to Plaintiffs as "Rhonda" tried to rebook the Traveling Plaintiffs on American Airlines, but stated that she was unable to do so due to "government action."

53. "Rhonda" told the Traveling Plaintiffs that she had never seen such a mess before.

54. "Rhonda" advised the Plaintiffs Leah Morgan and Angelia Eckenroth not to board their flight from MCI to ORD.

55. "Rhonda" advised Plaintiffs Leah Morgan and Angelia Eckenroth that if Plaintiffs Leah Morgan and Angelia Eckenroth boarded the flight leaving MCI on or about June 15, 2022, they would "get stuck."

56. "Rhonda" advised the Plaintiffs to contact Finnair.

57. Finnair advised Plaintiffs that Finnair was unable to assist because Plaintiffs had booked through Chatdeal.

58. Plaintiffs attempted to contact Chatdeal but were left on hold for a long time.

59. The Traveling Plaintiffs noticed that, as they waited on hold, available seats on flights to Paris, France were disappearing.

60. Unable to contact Chatdeal, the Traveling Plaintiffs booked five (5) one way tickets to Paris on Delta Airlines and KLM at a cost of $8,800.00.

61. Shortly after arriving in Paris, France, the Traveling Plaintiffs learned that their tickets for their return flights had been cancelled, leaving the Traveling Plaintiffs stranded in a foreign country.

62. Plaintiff Brad Eckenroth spent hours communicating with Chatdeal and American Airlines attempting to get the Traveling Plaintiffs' tickets for the return flights restored, especially for Plaintiffs Hannah Eckenroth, Shay Morgan and Ian Morgan, who were set to return on or about June 25, 2022.

63. A second American Airlines employee told Plaintiff Brad Eckenroth that the situation was a mess and that she had never seen a mess like it before.

64. A Chatdeal employee blamed the traveling Plaintiffs, claiming that the Traveling Plaintiffs messed up their own itinerary when the Traveling Plaintiffs failed to board the flight to Chicago, even though there was no flight out of Chicago and Chatdeal had not been available to assist Plaintiffs.

65. Plaintiff Brad Eckenroth asked Chatdeal to get the Traveling Plaintiffs rebooked on their original return flights, but Chatdeal refused.

66. American Airlines also demanded that Plaintiffs pay an additional $8,167.71 for Plaintiffs Hannah Eckenroth, Shay Morgan and Ian Morgan to purchase tickets to return to the United States.

67. Plaintiffs Angelia Eckenroth and Leah Morgan were forced to pay an additional $4,412.74 to purchase tickets to return to the United States.

68. Chatdeal could have exchanged tickets for free for the Traveling Plaintiffs.

69. Chatdeal intentionally, willfully and with reckless disregard for the rights of Plaintiffs chose not to exchanged tickets for free for the Traveling Plaintiffs.

70. Plaintiffs applied for refunds of all flights only because Chatdeal failed to obtain tickets for the Traveling Plaintiffs to replace the tickets for flights the Traveling Plaintiffs were unable to use.

71. Chatdeal agreed to refund $3,969.81 for some, but not all flights.

72. Chatdeal refused to refund any other amount on the grounds that "the flights were confirmed, valid and scheduled to depart."

73. Upon returning to the United States, Plaintiffs began researching Chatdeal and discovered that their experiences are not unique and that many other Chatdeal customers have reported similar failures by Chatdeal.

74. Chatdeal did not do their best to protect Plaintiffs from unexpected costs incurred before or during the Traveling Plaintiffs' travel.

75. Chatdeal intentionally, willfully and/or with reckless disregard for the rights of Plaintiffs protected Chatdeal's own interests instead of the interests of the Traveling Plaintiffs.

76. On information and belief, Chatdeal has policies and procedures in place directing its employees to put Chatdeal's interests ahead of the interests of Chatdeal's clients, even when the clients have purchased a "Travel Protection Plan."

77. The "implied" benefits of Chatdeal's "Travel Protection Plan" are illusory, false, ambiguous and facially relies on innuendo.

78. Chatdeal intends the "implied" benefits of Chatdeal's "Travel Protection Plan" to be illusory, false, ambiguous and rely on innuendo.

79. Chatdeal's promise that Chatdeal's "Travel Protection Plan" includes "implied benefits" is false, misleading and deceptive.

80. Chatdeal's promise to "do [their] best to prevent (sic) [travelers] from unexpected costs" is false, misleading and deceptive.

81. Plaintiffs were forced to spend an additional $24,010.64 because Chatdeal intentionally, willfully and with reckless disregard for Plaintiffs' rights failed and/or refused to exchange the Traveling Plaintiffs' tickets or simply rebook them on flights for which they had already purchased tickets.

82. Plaintiffs spent the $24,010.64 on credit cards, which have high interest rates, so Plaintiffs' actual losses continue to increase over time.

## COUNT I: VIOLATIONS OF THE KCPA BY KAYAK

83. Plaintiffs incorporate all preceding paragraphs here by reference.

84. The Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.* ("KCPA") prohibits the use of "any deceptive act or practice in connection with a consumer transaction." K.S.A. § 50-626(a)

85. A "consumer" is "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes." K.S.A. § 50-624(b).

86. Plaintiffs are consumers, as defined by K.S.A. § 50-624(b).

87. A "supplier" is "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions." K.S.A. § 50-624(l).

88. Advertising particular goods and/or services into the state of Kansas via the internet is "soliciting" within the meaning of K.S.A. 60-624(l). *Kluin v. Am. Suzuki Motor Corp.*, 274 Kan. 888, 900, 56 P.3d 829, 837-38 (2002).

89. Kayak solicits consumers by advertising their goods and/or services into the state of Kansas via the internet.

90. Kayak is a "supplier" as defined by K.S.A. § 50-624(l).

91. Kayak's Terms and Conditions purport to "expressly disclaims—to the fullest extent permissible—all warranties of any kind, whether express or implied." (Kayak's Terms and Conditions, effective August 1, 2022).

92. Suppliers may not exclude, modify or otherwise attempt to limit the implied warranties of merchantability as defined in K.S.A. 84-2-314, and amendments thereto, and fitness for a particular purpose, as defined in K.S.A. 84-2-315, and amendments thereto. K.S.A. § 50-639.

93. The Arbitration portion of Kayak's Terms and Conditions states:

TO THE EXTENT PERMITTED BY LAW, YOU WILL NOT AGREE TO ACT AS A REPRESENTATIVE OR A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, OR PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS IN ANY LAWSUIT AGAINST COMPANY IN ANY COURT, OR IN ARBITRATION, WITH RESPECT TO ANY CLAIMS. THIS SECTION (CONFIDENTIAL ARBITRATION) WILL SURVIVE THE TERMINATION OF THE RELATIONSHIP BETWEEN YOU AND COMPANY FOR ANY AND ALL DISPUTES YOU OR THE COMPANY HAS RELATING—IN ANY WAY—TO THE SERVICES OR YOUR RELATIONSHIP WITH THE COMPANY.

94. The Arbitration section of Kayak's Terms and Conditions states:

To the fullest extent permitted by applicable law, no arbitration brought under, or with respect to, Claims is to be joined to an arbitration involving any other party subject to these Terms, whether through class arbitration proceedings or otherwise. Unless you and

the Company agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative, private attorney general or class proceeding.

and

The arbitrator may award money or equitable relief in favor of only the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. Similarly, an arbitration award and any judgment confirming it apply only to that specific case; it cannot be used in any other case except to enforce the award itself.

95. Aggrieved consumers have a right to bring an action as private attorneys general against suppliers who violate the KCPA. K.S.A. § 50-636.

96. Consumers cannot waive their rights under the KCPA, except as explicitly provided in the KCPA. K.S.A. § 50-625(a).

97. Kayak is using the Warranty Disclaimer and Arbitration Section of Kayak's Terms and Conditions to deceive Kansas consumers, like Plaintiffs, into believing that they have waived their rights under the KCPA.

98. The purpose of the KCPA is to protect consumers from suppliers who commit deceptive and unconscionable practices and protect consumers from unbargained for warranty disclaimers. K.S.A. §§ 50-623(b) and 50-623(c).

99. Kayak violated the KCPA by demanding and/or falsely representing that Plaintiffs could waive their rights under the KCPA.

100. Kayak knowingly, willfully and with reckless disregard to Plaintiffs' rights set out to fraudulently induce Plaintiffs into "waiving" their consumer protection rights under the KCPA.

15

101. Kayak knowingly, willfully and with reckless disregard to the rights of consumers, seeks to evade its legal responsibilities to Kansas Consumers by deceiving them into thinking that they have waived their rights under the KCPA and other similar state and/or federal laws.

102. Plaintiffs have been aggrieved by Chatdeal's use of deceptive acts and practices in connection to Chatdeal's sale of airline tickets and "Travel Protection Plan" services to Plaintiffs.

103. Aggrieved consumers are entitled to:

   a. Declaratory judgment that an act or practice violates the KCPA; and

   b. Injunctive relief against a supplier who has violated, is violating, or is likely to violate this act; and

   c. Actual damages or civil penalties of not more than $10,000.00 for each violation; and

   d. Attorneys fees.

WHEREFORE, for the reasons stated above, Plaintiffs pray this Court enter judgments in their favor and against Defendant Kayak Software Corporation. as follows:

   a. Declaration that Kayak Software Corporation violated the KCPA by attempting to exclude, modify or otherwise attempt to limit the implied warranties of merchantability and/or fitness for a particular purpose; and

   b. Declaration that Kayak Software Corporation violated the KCPA by falsely representing to Plaintiffs and the public that Kayak.com is a search engine that searches travel websites to find consumers good prices when the truth is that

Kayak.com is a website that advertises to consumers on behalf of travel agencies and companies; and

c. Declaration that Kayak Software Corporation violated the KCPA by using deceptive and unconscionable acts and practices when it solicited Plaintiffs to enter a Consumer Transaction wherein Kayak Software Corporation sought to trick Plaintiffs into believing that they could and had waived their rights under the KCPA; and

d. Declaration that Kayak Software Corporation's Arbitration Agreement portion of its Terms and Conditions is void and of no effect because it is in violation of public policy; and

e. Declaration that Kayak Software Corporation's Warranty Disclaimer in its Terms and Conditions is void and of no effect as it is against public policy; and

f. Injunctive relief ordering Kayak Software Corporation to amend its Terms and Conditions to comply with Kansas' law consistent with the other relief granted herein; and

g. Injunctive relief ordering Kayak Software Corporation to send notice to all Kansas Consumers who have signed or otherwise indicated agreement to Kayak Software Corporation's Terms and Conditions that these terms and conditions have been declared void and unenforceable; and

h. In favor of Angelia Eckenroth for her actual damages or a statutory penalty of $10,000.00; punitive damages in an amount to be determined by a jury; and

17

  i. In favor of Brad Eckenroth for his actual damages or a statutory penalty of $10,000.00; punitive damages in an amount to be determined by a jury; and

  j. In favor of Hannah Eckenroth for her actual damages or a statutory penalty of $10,000.00; punitive damages in an amount to be determined by a jury; and

  k. In favor of Leah Morgan for her actual damages or a statutory penalty of $10,000.00; punitive damages in an amount to be determined by a jury; and

  l. In favor of Shay Morgan for her actual damages or a statutory penalty of $10,000.00; punitive damages in an amount to be determined by a jury; and

  m. In favor of Ian Morgan for his actual damages or a statutory penalty of $10,000.00; punitive damages in an amount to be determined by a jury; and

  n. An award of Plaintiffs' reasonable attorneys' fees; and

  o. For such other relief as the Court deems just and proper.

## COUNT I: VIOLATIONS OF THE KCPA BY CHATDEAL

104. Plaintiffs incorporate all preceding paragraphs here by reference

105. Chatdeal solicits consumers by advertising their goods and/or services into the state of Kansas via the internet.

106. Chatdeal is a "supplier" as defined by K.S.A. § 50-624(l).

107. Chatdeal's advertisement of its "Travel Protection Plan" is a deceptive, dishonest and unfair practice in that it misrepresents the benefits of the "Travel Protection Plan" as alleged and outlined above.

108. Chatdeal violated the KCPA when Chatdeal used deceptive acts and practices to solicit the Traveling Plaintiffs to purchase the "Travel Protection Plan" as an additional service when consumers purchase airline tickets through Chatdeal.

109. Plaintiffs have been aggrieved by Chatdeal's use of deceptive acts and practices in connection to Chatdeal's sale of airline tickets and "Travel Protection Plan" services to Plaintiffs.

110. Aggrieved consumers have a right of action against suppliers who violate the KCPA. K.S.A. § 50-636.

111. Aggrieved consumers are entitled to:

    e.    Declaratory judgment that an act or practice violates the KCPA;

    f.    Civil penalties of not more than $10,000.00 for each violation;

    g.    Actual damages;

    h.    Attorneys fees.

WHEREFORE, for the reasons stated above, Plaintiffs pray this Court enter judgments in their favor and against Defendants Chatdeal as follows:

    p. Declaration that Chatdeal violated the KCPA by using deceptive acts and practices to solicit the Traveling Plaintiffs to purchase the "Travel Protection Plan" as an additional service when consumers purchase airline tickets through Chatdeal; and

    q. In favor of Angelia Eckenroth for her actual damages or a statutory penalty of $10,000.00; punitive damages in an amount to be determined by a jury; and

 r. In favor of Hannah Eckenroth for her actual damages or a statutory penalty of $10,000.00; punitive damages in an amount to be determined by a jury; and

 s. In favor of Leah Morgan for her actual damages or a statutory penalty of $10,000.00; punitive damages in an amount to be determined by a jury; and

 t. In favor of Shay Morgan for her actual damages or a statutory penalty of $10,000.00; punitive damages in an amount to be determined by a jury; and

 u. In favor of Ian Morgan for his actual damages or a statutory penalty of $10,000.00; punitive damages in an amount to be determined by a jury; and

 v. An award of Plaintiffs' reasonable attorneys' fees; and

 w. For such other relief as the Court deems just and proper.

Respectfully submitted,

Dated:  **THE WILLISTON LAW FIRM, LLC**

By: *Keith N. Williston*
Keith N. Williston MO #69433
201 SE Williamsburg Dr
Blue Springs, MO 64014
Tele:   (913) 207-5450
Fax: (816) 492-8212
WillistonKeith@yahoo.com

**Attorney for Plaintiffs**